**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**SOUTHERN DIVISION**

| | |
|---|---|
| JOHN ADKINSON, as an individual and on behalf of all others similarly situated, | CASE NO.: ____8:22-cv-00870____ |
| Plaintiff, | |
| v. | **CLASS ACTION COMPLAINT** |
| HORIZON ACTUARIAL SERVICES, LLC, | DEMAND FOR JURY TRIAL |
| Defendant. | |

Plaintiff John Adkinson ("Plaintiff") brings this Class Action Complaint against Horizon Actuarial Services, LLC, as an individual and on behalf of all others similarly situated, and alleges, upon personal knowledge as to his own actions and his counsels' investigation, and upon information and belief as to all other matters, as follows:

## I.   INTRODUCTION

1.   Plaintiff brings this class action against Horizon Actuarial Services, LLC and its owners (collectively "Horizon" or "Defendant"), a consulting firm that provides actuarial services to pension and health and welfare plans in various industries, to seek damages for himself and other similarly situated benefit plan participants or any other person(s) impacted in the data breach at issue ("Plan Participants" or "Class Members") who he seeks to represent, as well as other equitable relief, including, without limitation, injunctive relief designed to protect the very sensitive information of Plaintiff and other Class Members.

2.   This action arises from Horizon's failure to properly secure and safeguard personal identifiable information, including without limitation, unencrypted and unredacted names, dates of birth, Social Security numbers (collectively, "personal identifiable information" or "PII"), and

personal health information which is protected by the HIPAA ("PHI") (collectively, "Private Information").

3.      According to the "Notice of Data Incident" letter it posted on its website ("Notice"), on or about November 12, 2021, Horizon "received an email from a group claiming to have stolen copies of personal data from its computer servers" after which it determined the veracity of the claims in the email, contacted law enforcement, and "negotiated with and paid the group in exchange for an agreement that they would delete and not distribute or otherwise misuse the stolen information." Horizon's "investigation revealed that two Horizon Actuarial computer servers were accessed without authorization for a limited period on November 10 and 11, 2021" (The "Data Breach").[1]

4.      According to the website Notice, the cyber-criminals that Horizon negotiated with and paid an undisclosed amount of money provided Horizon with "a list of information they claimed to have stolen. The types of information impacted may include names, dates of birth, Social Security numbers and health plan information."[2]

5.      By January 9, 2022, Horizon and "third-party computer specialists" determined that the affected files included "potentially sensitive information was located in one of [the stolen] files." Notice Letter, Ex. A.

6.      Beginning on January 13, 2022, Horizon chose to notify Plans of its Data Breach instead sending notice letters to affected Participants. Over four months after it was first aware of the Data Breach, on or about March 23, 2022, began sending Plan Participants notice letters. Notice Letter, Ex. A.

---

[1] https://www.horizonactuarial.com/notice-of-data-incident.html (last accessed Apr. 7, 2022).
[2] *Id.*

7.      Plaintiff alleges Horizon failed to provide timely, accurate, and adequate notice to Plaintiff and Class Members, instead opting to first notify groups that retained Horizon to provide technical and actuarial consulting services for their pensions, health and welfare plans, and/or other benefits (the "Plans"). Notification to the actual data breach victims, the Plan Participants like Plaintiff and Class Members, was delayed by approximately four months after Horizon first learned of the Data Breach.

8.      Plan Participants' knowledge about what Private Information Horizon lost, as well as precisely what types of information was on its computers unencrypted and in the possession of unknown third parties, was unreasonably delayed by Horizon's notification of the Data Breach only to the Plans, then to state Attorneys General, and finally, after a four-month delay, to Participants—including Plaintiff and Class Members.

9.      Plaintiff in this action was a Plan Participant in two pension and benefit plans managed by Horizon for his union: the Sheet Metal Workers Local No. 85 Pension Plan and the Sheet Metal Workers Welfare Fund Local No. 85. Prior to a letter about the Data Breach, Plaintiff was unaware that Horizon was performing actuarial services for his union and the Plans. The first that he learned of the Data Breach was when he received by First Class U.S. Mail a Notice of Data Breach letter dated March 23, 2022 directly from Horizon. *See* **Exhibit A** ("Notice Letter").

10.      In its Notice Letters, sent to Plaintiff, Class Members, and state and federal agencies, Horizon failed to explain why it took the company over four months (from November 12, 2021, when Horizon states it received the email from the cyber-criminals, until March 23, 2022, when its notice letters to Plan Participants began being sent) to alert Class Members that their sensitive Private Information had been exposed.[3] As a result of this delayed response, Plaintiff

---

[3] *Id.*

and Class Members were, and continue to be, at significant risk to identity theft and various other forms of personal, social, and financial harm.

11.     Plaintiff's and Class Members' unencrypted, unredacted Private Information was compromised due to Horizon's negligent and/or careless acts and omissions, and due to its utter failure to protect Class Members' sensitive data. Hackers obtained their Private Information because of its value in exploiting and stealing the identities of Plaintiff and similarly situated Class Members. The risks to the Class will remain for its members' respective lifetimes.

12.     Plaintiff brings this action on behalf of all persons whose Private Information was compromised as a result of Horizon's failure to: (i) adequately protect the PII and PHI entrusted to it; (ii) warn Plans and Participants of its inadequate information security practices; and (iii) effectively monitor its own network for security vulnerabilities and incidents. Horizon's conduct amounts to negligence, and this conduct violates federal and state statutes.

13.     Plaintiff and Class Members have suffered injury as a result of Horizon's conduct. These injuries include: (i) lost or diminished value of Private Information; (ii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their Private Information; (iii) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach, including but not limited to lost time, (iv) the loss of time needed to take appropriate measures to avoid unauthorized and fraudulent charges; change their usernames and passwords on their accounts; investigate, correct and resolve unauthorized debits; deal with spam messages and e-mails received subsequent to the Data Breach, (v) charges and fees associated with fraudulent charges on their accounts, and (vi) the continued and certainly an increased risk to their Private Information, which remains in Horizon's possession and is subject to further unauthorized disclosures so long as Horizon fails to

undertake appropriate and adequate measures to protect Private Information. These risks will remain for the lifetimes of Plaintiff and Class Members.

14.     Horizon disregarded the rights of Plaintiff and Class Members by intentionally, willfully, recklessly, or at the very least negligently failing to take and implement adequate and reasonable measures to ensure that Plan Participants' Private Information was safeguarded, failing to take available steps to prevent an unauthorized disclosure of data, and failing to follow applicable, required and appropriate protocols, policies and procedures regarding the encryption of data, even for internal use. As the result, the Private Information of Plaintiff and Class Members was compromised through disclosure to an unknown and unauthorized third party. Plaintiff and Class Members have a continuing interest in ensuring that their information is and remains safe, and they should be entitled to injunctive and other equitable relief.

## II.     PARTIES

15.     Plaintiff John Adkinson is a resident and citizen of Georgia, who lives in Lithia Springs, Douglas County, Georgia. Mr. Adkinson received Horizon's *Notice of Data Incident*, dated March 23, 2022, by First Class U.S. Mail. Ex. A.

16.     Defendant Horizon Actuarial Services, LLC is a Delaware limited liability company, which has a principal place of business at 8601 Georgia Avenue, Suite 700, Silver Spring, Maryland 20910. It can be served through its registered agent, CSC-Lawyers Incorporating Service Company at 7 St. Paul Street, Suite 820, Baltimore, Maryland 21202.

17.     According to its website, Horizon Actuarial Services, LLC has offices located in Maryland, California (multiple locations), Colorado, Florida, Georgia, and Ohio.[4]

18.     The citizenship for each owner of Horizon Actuarial Services, LLC, is:

---

[4] https://www.horizonactuarial.com/contact-us.html (last accessed Apr. 7, 2022).

a.    Stan Goldfarb, Silver Springs, Maryland;

b.    Mary Ann Dunleavy, Silver Springs, Maryland;

c.    Cary Franklin, Los Angeles, California;

d.    Kathleen Coda, Los Angeles, California;

e.    Ron Littler, Los Angeles, California;

f.    Mark Lewis, Atlanta, Georgia;

g.    Nathan Slaff, Atlanta, Georgia; and

h.    Tom Cliffel, Cleveland, Ohio.

19.    The true names and capacities of any additional yet unnamed parties, whether persons or entities, individual, corporate, associate, or otherwise, who may be responsible for some of the claims alleged herein are currently unknown to Plaintiff. Plaintiff will seek leave of court to amend this complaint to reflect the true names and capacities of such other responsible parties when their identities become known.

20.    All of Plaintiff's claims stated herein are asserted against Horizon and any of its owners, predecessors, successors, subsidiaries, agents and/or assigns.

### III.    JURISDICTION AND VENUE

21.    This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(d) because this is a class action wherein the amount in controversy exceeds the sum or value of $5 million, exclusive of interest and costs, there are more than 100 members in the proposed class, and at least one member of the class is a citizen of a state different from one or more of the Defendant.

22.     This Court has personal jurisdiction over Defendant as one of Defendant's principal places of business is located within this District, and at least one owner of the LLC is a citizen of this District.

23.     Venue is proper in this Court under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to these claims occurred in, were directed to, and/or emanated from this District; multiple Defendants reside within this judicial district; and a substantial part of the events giving rise to the claims alleged herein occurred within this judicial district.

## IV.     FACTUAL ALLEGATIONS

### Background

24.     Horizon is a "consulting firm that specializes in providing innovative actuarial solutions to multiemployer benefit plans. [It] proudly serve[s] over 120 pension and health and welfare plans in various industries, including construction, trucking, professional sports, hospitality, entertainment, retail food, and communication[.]"[5]

25.     On its website, Horizon claims that it has "always viewed [its] role as consultants whose responsibility it is to *protect the interests of the plan participants* by keeping all trustees, both labor and management, well informed and well equipped to navigate the challenges facing their plans."[6]

26.     Horizon stated that with a 2018 merger of two firms, it would "have outstanding depth of actuarial and consulting resources for both pension and health and welfare plans on both the east and west coasts, serving clients throughout the U.S."[7]

---

[5] https://www.horizonactuarial.com/about-us.html (last accessed Apr. 7, 2022).
[6] *Id.* (emphasis added).
[7] https://www.horizonactuarial.com/blog/category/horizon-updates (last accessed Apr. 7, 2022).

27.     Horizon asserts that it "adhere[s] to strict quality standards," is "sensitive to the interests of all parties," and provides actuarial and consulting services in these (and other) areas:

      a.   Actuarial valuations

      b.   PPA compliance

      c.   Actuarial projections - both deterministic and stochastic

      d.   Withdrawal liability

      e.   Retirement plan design and implementation

      f.   Health plan design, rate setting, and vendor marketing

      g.   Second opinion actuarial review.[8]

28.     Horizon "is an independent company operating as a limited liability corporation incorporated in the state of Delaware. It is owned and operated by its principals. Horizon Actuarial is not affiliated with any bank, brokerage, investment firm, or insurance company."[9]

***The Data Breach***

29.     In the Notice of Data Incident Horizon posted on its website, Horizon explains that "[o]n November 12, 2021, [it] received an email from a group claiming to have stolen copies of personal data from its computer servers. Horizon Actuarial immediately initiated efforts to secure its computer servers and with the assistance of third-party computer specialists, launched an investigation into the legitimacy of the claims in the email. Horizon Actuarial also provided notice to law enforcement. During the course of the investigation, Horizon Actuarial negotiated with and paid the group in exchange for an agreement that they would delete and not distribute or otherwise misuse the stolen information."[10]

---

[8] https://www.horizonactuarial.com/our-services.html (last accessed Apr. 7, 2022).
[9] https://www.horizonactuarial.com/about-us.html (last accessed Apr. 7, 2022).
[10] https://www.horizonactuarial.com/notice-of-data-incident.html (last accessed Apr. 7, 2022).

30.     Two of its servers were accessed between November 10 and 11, 2021. The cybercriminal group provided Horizon with a list in information it had stolen, which included names, dates of birth, Social Security numbers and health plan information.[11]

31.     On its website, Horizon states that Cybercriminals accessed and exfiltrated information from the following Plans, for which Horizon "received information regarding plan participants and their family members for business and compliance purposes":

- Local 295 IBT Employer Group Welfare Fund

- Major League Baseball Players Benefit Plan

- National Hockey League Players' Health and Benefits Fund

- OCU Health & Welfare Trust

- OCU Pension Trust

- Rocky Mountain UFCW Health Benefit Plan for Retired Employees

- Rocky Mountain UFCW Retail and Meat Pension Plan

- Teamsters Local 295 Employers Group Welfare Trust

- Twin Cities Bakery Drivers Pension Fund

- UA Local 198 Pension Fund

- UFCW & Employers Benefit Trust

- UFCW Comprehensive Benefit Trust

- UFCW Intermountain Health Fund

- UFCW Local 711 & Retail Food Employers Benefit Fund.[12]

---

[11] *Id.*

[12] *Id.*

32.     Upon information and belief, Horizon's list of Plans on its website is incomplete. For example, Plaintiff's data was stolen due to his participation in the Sheet Metal Workers Local No. 85 Pension Plan and Sheet Metal Workers Welfare Fund Local No. 85. Neither of these funds is listed on Horizon's website. *See* Exhibit A.

33.     In mid-January 2022, just over two months after it was first aware of the Data Breach, Horizon began notifying Plans and state Attorneys General ("AGs") about the hacking and breach of its computer systems that involved the theft of sensitive Private Information of Plan Participants.[13]

34.     As its notice to the AGs acknowledges, Horizon's failure to protect its systems exposed 194,195 Class Members' confidential Private Information to criminals.[14] It admits that the confidential information that was accessed without authorization included persons' full names along with their Social Security number.[15] Horizon had obligations created by HIPAA, contract, industry standards, and common law to keep Participants' Private Information confidential and to protect it from unauthorized access and disclosure.

35.     On March 9, 2022, almost four months after it first knew of the Data Breach, Horizon notified the Department of Health and Human Services that the personal health information (PHI) of 38,418 Class Members was also stolen by the cyber-criminals. As required by section 13402(e)(4) of the HITECH Act, the Secretary must post a list of breaches of unsecured protected health information affecting 500 or more individuals. Horizon's breach was included in the Secretary's list.[16]

---

[13] Office of the Maine Attorney General, *Data Breach Notifications*, available at: https://apps. web.maine.gov/online/aeviewer/ME/40/1df8c637-7580-4be2-8bdc-304eb789125d.shtml     (last accessed Apr. 7, 2022).
[14] *Id.*
[15] *Id.*
[16] https://ocrportal.hhs.gov/ocr/breach/breach_report.jsf (last accessed Apr. 7, 2022).

36.     Upon information and belief, Class Members' Private Information was not encrypted prior to the data breach.

37.     Upon information and belief, the cyberattack was targeted at Horizon as a consulting firm that serves pension and health and welfare plans in various industries and collects and maintains valuable PII and PHI belonging to Participants from its many clients, the Plans.[17]

38.     Upon information and belief, the cyberattack was expressly designed to gain access to private and confidential data, including (among other things) the PII and PHI of Plaintiff and the Class Members.

39.     Beginning on or about March 23, 2022, Horizon sent affected persons (including Plaintiff Adkinson) a *Notice of Data Incident*, informing the recipients of the notice that their Private Information was involved, and stating:

> Horizon Actuarial takes this incident and the security of information in its care very seriously. Horizon Actuarial is reviewing its existing security policies and has implemented additional measures to further protect against similar incidents moving forward.

*See* Exhibit A.

40.     Horizon "arranged for [Class Members] to activate, at no cost to you, identity monitoring services for 12 months provided by Kroll. Kroll is a global leader in risk mitigation and response, and their team has extensive experience helping people who have sustained an unintentional exposure of confidential data. Your identity monitoring services include Credit Monitoring, $1 Million Identity Fraud Loss Reimbursement, Fraud Consultation, and Identity Theft Restoration." Exhibit A.

41.     Horizon also advises Class Members to "remain vigilant against incidents of identity theft and fraud by reviewing account statements and monitoring notices from their plans,

---

[17] *See* https://www.horizonactuarial.com/about-us.html (last accessed Apr. 7, 2022).

including any Explanation of Benefits, and free credit reports for suspicious activity and to detect errors." Exhibit A.

42.     With its offer of credit and identity monitoring services, Horizon is acknowledging that the impacted persons are subject to an imminent threat of identity theft and financial fraud.

43.     In response to the Data Breach, Horizon claims, "is reviewing its existing security policies and has implemented additional measures to further protect against similar incidents moving forward."[18] Thus, Horizon admits enhanced "implement[ing] additional measures" was required, but there is no indication whether these steps will be adequate to protect Plaintiff's and Class Members' PII and PHI going forward.

44.     Horizon had obligations created by contract, industry standards, common law, and representations made to the Plans to keep confidential the PII and PHI of Plaintiff and Class Members that was entrusted to it by the Plans and to protect the Private Information from unauthorized access and disclosure. As it acknowledges on its website, it has a responsibility "to *protect the interests of the plan participants* . . . ."[19]

45.     Plaintiff and Class Members provided extensive PII and PHI to Horizon, typically through their Plans, with the reasonable expectation that Horizon, as an actuarial consulting firm whose primary interest was in protecting the interests of the Plan Participants, would comply with its duty and obligations and representations to keep such information confidential and secure from unauthorized access.

46.     Horizon failed to uphold its data security obligations to Plaintiff and Class Members. As a result, Plaintiff and Class Members have been significantly harmed and will be at a high risk of identity theft and financial fraud for many years to come.

---

[18] Exhibit A.
[19] *Id.* (emphasis added).

47.     Horizon did not use reasonable security procedures and practices appropriate to the nature of the sensitive, unencrypted information it was maintaining, causing Plaintiff's and Class Members' PII and PHI to be exposed.

### Horizon had a duty to secure Private Information and prevent data breaches

48.     Horizon could have prevented this Data Breach by properly encrypting or otherwise protecting their equipment and computer files containing Private Information.

49.     In its notice letters, Horizon acknowledged the sensitive and confidential nature of the Private Information. To be sure, collection, maintaining, and protecting Private Information is vital to virtually all of Horizon's business purposes as actuaries. Horizon acknowledged through its conduct and statements that the misuse or inadvertent disclosure of Private Information can pose major privacy and financial risks to impacted individuals, and that under state law they may not disclose and must take reasonable steps to protect Private Information from improper release or disclosure.

50.     At all relevant times, Horizon had a duty to Plaintiff and Class Members to properly secure their Private Information, encrypt and maintain such information using industry standard methods, train its employees, utilize available technology to defend its systems from invasion, act reasonably to prevent foreseeable harm to Plaintiff and Class Members, and to *promptly* notify Plaintiff and Class Members when Horizon became aware that their Private Information may have been compromised.

51.     Horizon's duty to use reasonable security measures arose as a result of the special relationship that existed between Horizon, on the one hand, and Plaintiff and the Class Members, on the other hand. The special relationship arose because Plaintiff and the Members of the Class entrusted Horizon with their Private Information when the Plans entrusted Horizon to manage

actuarial services for pension and health and welfare plans. Horizon readily admits that its primary duty is to protect the financial interests the Plan Participants, not the Plans' management.

52.     Horizon had the resources necessary to prevent the Data Breach but neglected to adequately invest in security measures, despite its obligation to protect such information. Accordingly, Horizon breached its common law, statutory, and other duties owed to Plaintiffs and Class Members.

53.     Security standards commonly accepted among businesses that store Private Information using the internet include, without limitation:

        a.    Maintaining a secure firewall configuration;

        b.    Maintaining appropriate design, systems, and controls to limit user access to certain information as necessary;

        c.    Monitoring for suspicious or irregular traffic to servers;

        d.    Monitoring for suspicious credentials used to access servers;

        e.    Monitoring for suspicious or irregular activity by known users;

        f.    Monitoring for suspicious or unknown users;

        g.    Monitoring for suspicious or irregular server requests;

        h.    Monitoring for server requests for Private Information;

        i.    Monitoring for server requests from VPNs; and

        j.    Monitoring for server requests from Tor exit nodes.

**The Data Breach was a foreseeable risk of which Horizon was on notice.**

54.     It is well known that Private Information, including Social Security numbers and financial account information, in particular, is an invaluable commodity and a frequent target of hackers.

55.     In 2019, a record 1,473 data breaches occurred, resulting in approximately 164,683,455 sensitive records being exposed, a 17% increase from 2018.[20]

56.     Of the 1,473 recorded data breaches, 108 of them were in the banking/credit/financial industry, with the number of sensitive records being exposed exceeding 100 million. In fact, over 62% of the 164 million sensitive records exposed in data breaches in 2019 were exposed in those 108 breaches in the banking/credit/financial sector.[21] As actuaries who provide consulting services related to pensions and health and welfare plans, Horizon's work is closely intertwined with banking, insurance, and the financial markets.

57.     The 108 reported financial sector data breaches reported in 2019 exposed 100,621,770 sensitive records, compared to 2018 in which only 1,778,658 sensitive records were exposed in financial sector breaches.[22]

58.     Individuals place a high value not only on their Private Information, but also on the privacy of that data. For the individual, identity theft causes "significant negative financial impact on victims" as well as severe distress and other strong emotions and physical reactions.

59.     Individuals are particularly concerned with protecting the privacy of their financial account information and Social Security numbers, which are the "secret sauce" that is "as good as your DNA to hackers." There are long-term consequences to data breach victims whose Social Security numbers are taken and used by hackers. Even if they know their Social Security numbers have been accessed, Plaintiff and Class Members cannot obtain new numbers unless they become a victim of Social Security number misuse. Even then, the Social Security Administration has warned that "a new number probably won't solve all problems . . . and won't guarantee . . . a fresh

---

[20] https://www.idtheftcenter.org/wp-content/uploads/2020/01/01.28.2020_ITRC_2019-End-of-Year-Data-Breach-Report_FINAL_Highres-Appendix.pdf (last accessed Apr. 7, 2022).
[21] *Id.*
[22] *Id.* at 15.

start."

60.     In light of recent high profile data breaches at other industry leading companies, including, Microsoft (250 million records, December 2019), Wattpad (268 million records, June 2020), Facebook (267 million users, April 2020), Estee Lauder (440 million records, January 2020), Whisper (900 million records, March 2020), and Advanced Info Service (8.3 billion records, May 2020), Horizon knew or should have known that its electronic records might be targeted by cybercriminals.

61.     Indeed, cyberattacks have become so notorious that the FBI and U.S. Secret Service have issued a warning to potential targets so they are aware of and take appropriate measures to prepare for and are able to thwart such an attack.

62.     Despite the prevalence of public announcements of data breach and data security compromises, and despite its own acknowledgments of data security compromises, and despite their own acknowledgment of its duties to keep Private Information private and secure, Horizon failed to take appropriate steps to protect the Private Information of Plaintiff and the proposed Class from being compromised.

63.     The Federal Trade Commission ("FTC") defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority."[23] The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, Social Security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number."[24]

---

[23] 17 C.F.R. § 248.201 (2013).
[24] *Id.*

64.     The ramifications of Horizon's failure to keep Plan Participants' Private Information secure are long lasting and severe. Once Private Information is stolen, particularly Social Security and driver's license numbers, fraudulent use of that information and damage to victims is likely to continue for years.

### The Value of Personal Identifiable Information

65.     The Private Information of consumers remains of high value to criminals, as evidenced by the prices they will pay through the dark web. Numerous sources cite dark web pricing for stolen identity credentials. For example, personal information can be sold at a price ranging from $40 to $200, and bank details have a price range of $50 to $200.[25] According to the Dark Web Price Index for 2021, payment card details for an account balance up to $1,000 have an average market value of $150, credit card details with an account balance up to $5,000 have an average market value of $240, stolen online banking logins with a minimum of $100 on the account have an average market value of $40, and stolen online banking logins with a minimum of $2,000 on the account have an average market value of $120.[26]

66.     Social Security numbers, for example, are among the worst kind of personal information to have stolen because they may be put to a variety of fraudulent uses and are difficult for an individual to change. The Social Security Administration stresses that the loss of an individual's Social Security number, as is the case here, can lead to identity theft and extensive financial fraud:

> A dishonest person who has your Social Security number can use it to get other personal information about you. Identity thieves can use your number and your good credit to apply for more credit in your name. Then, they use the credit cards

---

[25] Anita George, *Your personal data is for sale on the dark web. Here's how much it costs,* Digital Trends (Oct. 16, 2019), https://www.digitaltrends.com/computing/personal-data-sold-on-the-dark-web-how-much-it-costs/ (last accessed Apr. 8, 2022).
[26] Zachary Ignoffo, *Dark Web Price Index 2021*, Privacy Affairs (Mar. 8, 2021), https://www.privacyaffairs.com/dark-web-price-index-2021/ (last accessed Apr. 8, 2022).

and don't pay the bills, it damages your credit. You may not find out that someone
is using your number until you're turned down for credit, or you begin to get calls
from unknown creditors demanding payment for items you never bought. Someone
illegally using your Social Security number and assuming your identity can cause
a lot of problems.[27]

67.     Furthermore, trying to change or cancel a stolen Social Security number is no minor

task. An individual cannot obtain a new Social Security number without significant paperwork and

evidence of actual misuse. In other words, preventive action to defend against the possibility of

misuse of a Social Security number is not permitted; an individual must show evidence of actual,

ongoing fraud activity to obtain a new number.

68.     Even then, a new Social Security number may not be effective, as "[t]he credit

bureaus and banks are able to link the new number very quickly to the old number, so all of that

old bad information is quickly inherited into the new Social Security number."[28]

69.     This data, as one would expect, demands a much higher price on the black market.

Martin Walter, senior director at cybersecurity firm RedSeal, explained, "[c]ompared to credit card

information, personally identifiable information and Social Security Numbers are worth more than

10x on the black market."[29]

70.     Private Information can be used to distinguish, identify, or trace an individual's

identity, such as their name and Social Security number. This can be accomplished alone, or in

combination with other personal or identifying information that is connected or linked to an

---

[27] Social Security Administration, *Identity Theft and Your Social Security Number* (July 2021),
https://www.ssa.gov/pubs/EN-05-10064.pdf (last accessed Apr. 8, 2022).

[28] Brian Naylor, *Victims of Social Security Number Theft Find It's Hard to Bounce Back*, NPR
(Feb. 9, 2015), http://www.npr.org/2015/02/09/384875839/data-stolen-by-anthem-s-hackers-has
-millions-worrying-about-identity-theft (last accessed Apr. 8, 2022).

[29] Tim Greene, *Anthem Hack: Personal Data Stolen Sells for 10x Price of Stolen Credit Card
Numbers*, Computer World (Feb. 6, 2015), http://www.itworld.com/article/2880960/anthem-hac
k-personal-data-stolen-sells-for-10x-price-of-stolen-credit-card-numbers.html      (last accessed
Apr. 8, 2022).

individual, such as their birthdate, birthplace, and mother's maiden name.[30]

71.     Given the nature of Horizon's Data Breach, as well as the length of the time Horizon's systems were breached and the long delay in notification to Class Members, it is foreseeable that the compromised Private Information has been or will be used by hackers and cybercriminals in a variety of devastating ways. Indeed, the cybercriminals who possess Plaintiff's and Class Members' Private Information can easily obtain Plaintiff's and Class Members' tax returns or open fraudulent credit card accounts in Class Members' names.

72.     Based on the foregoing, the information compromised in the Data Breach is significantly more valuable than the loss of, for example, credit card information in a retailer data breach, because credit card victims can cancel or close credit and debit card accounts.[31] The information compromised in this Data Breach is impossible to "close" and difficult, if not impossible, to change (such as Social Security numbers).

73.     To date, Horizon has offered its consumers *only one year* of identity monitoring services, despite the long period of exposure (over 100 days) and the approximately yearlong delay from their discovery of the Data Breach to the Notice Letters. The offered services are inadequate to protect Plaintiff and Class Members from the threats they face for years to come, particularly in light of the Private Information at issue here.

74.     The injuries to Plaintiff and Class Members were directly and proximately caused by Horizon's failure to implement or maintain adequate data security measures for its current and former customers.

---

[30] *See* OFFICE OF MGMT. & BUDGET, OMB MEMORANDUM M-07-16 n. 1.
[31] *See* Jesse Damiani, *Your Social Security Number Costs $4 On The Dark Web, New Report Finds*, Forbes (Mar 25, 2020), https://www.forbes.com/sites/jessedamiani/2020/03/25/your-social-security-number-costs-4-on-the-dark-web-new-report-finds/?sh=6a44b6d513f1     (last accessed Apr. 8, 2022).

*Horizon Failed to Comply with FTC Guidelines*

75.     Federal and State governments have established security standards and issued recommendations to lessen the risk of data breaches and the resulting harm to consumers and financial institutions. The Federal Trade Commission ("FTC") has issued numerous guides for business highlighting the importance of reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.[32]

76.     In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*, which established guidelines for fundamental data security principles and practices for business.[33] The guidelines note businesses should protect the personal consumer and consumer information that they keep, as well as properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct security problems.

77.     The FTC recommends that companies verify that third-party service providers have implemented reasonable security measures.[34]

78.     The FTC recommends that businesses:

a.     Identify all connections to the computers where you store sensitive information.

b.     Assess the vulnerability of each connection to commonly known or reasonably foreseeable attacks.

c.     Do not store sensitive consumer data on any computer with an internet connection unless it is essential for conducting their business.

---

[32] Federal Trade Commission, *Start With Security* (June 2015), https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf (last accessed Apr. 8, 2022).
[33] Federal Trade Commission, *Protecting Personal Information: A Guide for Business* (Oct. 2016), https://www.ftc.gov/tips-advice/business-center/guidance/protecting-personal-information-guide-business (last accessed Apr. 8, 2022).
[34] FTC, *Start with Security*, *supra* note 31.

d.    Scan computers on their network to identify and profile the operating system and open network services. If services are not needed, they should be disabled to prevent hacks or other potential security problems. For example, if email service or an internet connection is not necessary on a certain computer, a business should consider closing the ports to those services on that computer to prevent unauthorized access to that machine.

e.    Pay particular attention to the security of their web applications—the software used to give information to visitors to their websites and to retrieve information from them. Web applications may be particularly vulnerable to a variety of hack attacks.

f.    Use a firewall to protect their computers from hacker attacks while it is connected to a network, especially the internet.

g.    Determine whether a border firewall should be installed where the business's network connects to the internet. A border firewall separates the network from the internet and may prevent an attacker from gaining access to a computer on the network where sensitive information is stored. Set access controls—settings that determine which devices and traffic get through the firewall—to allow only trusted devices with a legitimate business need to access the network. Since the protection a firewall provides is only as effective as its access controls, they should be reviewed periodically.

h.    Monitor incoming traffic for signs that someone is trying to hack in. Keep an eye out for activity from new users, multiple log-in attempts from unknown users or computers, and higher-than-average traffic at unusual times of the day.

     i.     Monitor outgoing traffic for signs of a data breach. Watch for unexpectedly large amounts of data being transmitted from their system to an unknown user. If large amounts of information are being transmitted from a business' network, the transmission should be investigated to make sure it is authorized.

79.    The FTC has brought enforcement actions against businesses for failing to protect consumer and consumer data adequately and reasonably, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

80.    Because Class Members entrusted Horizon with their Private Information directly or indirectly through Horizon's actuarial services to the Plans, Horizon had, and has, a duty to the Class Members to keep their Private Information secure.

81.    Plaintiff and the other Class Members reasonably expected that when they provide Private Information to the Plans or entities through which they receive benefits, that the consulting firm hired for actuarial services to pension and health and welfare plans—here, Horizon—would safeguard their Private Information. And as Horizon readily acknowledges, its responsibility is to protect the interests of the Plan Participants—including Plaintiff and Class Members.

82.    Horizon was at all times fully aware of its obligation to protect the personal and financial data of consumers, including Plaintiff and Members of the Classes. Horizon was also aware of the significant repercussions if it failed to do so.

83.    Horizon's failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data—including Plaintiff's and Class Members' full

names, Social Security numbers, and other highly sensitive and confidential information—constitutes an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

**_Horizon's conduct violates HIPAA_**

84.     HIPAA requires covered entities to protect against reasonably anticipated threats to the security of sensitive patient health information.

85.     Covered entities must implement safeguards to ensure the confidentiality, integrity, and availability of PHI. Safeguards must include physical, technical, and administrative components.

86.     Title II of HIPAA contains what are known as the Administrative Simplification provisions. 42 U.S.C. §§ 1301, _et seq._ These provisions require, among other things, that the Department of Health and Human Services ("HHS") create rules to streamline the standards for handling PII like the data Defendant left unguarded. The HHS subsequently promulgated multiple regulations under authority of the Administrative Simplification provisions of HIPAA. These rules include 45 C.F.R. § 164.306(a)(1)–(4); 45 C.F.R. § 164.312(a)(1); 45 C.F.R. § 164.308(a)(1)(i); 45 C.F.R. § 164.308(a)(1)(ii)(D); and 45 C.F.R. § 164.530(b).

87.     Defendant's Data Breach resulted from a combination of insufficiencies that demonstrate it failed to comply with safeguards mandated by HIPAA regulations.

88.     Data Breaches that result in the removal of protected data are also considered a breach under the HIPAA Rules because there is an access of PHI not permitted under the HIPAA Privacy Rule:

> A breach under the HIPAA Rules is defined as, " . . . the acquisition, access, use, or disclosure of PHI in a manner not permitted under the [HIPAA Privacy Rule] which compromises the security or privacy of the PHI." _See_ 45 C.F.R. § 164.40.

### *Plaintiff and Class Members have suffered concrete injuries*

89.     Plaintiff and Class Members reasonably expected that Defendant would provide adequate security protections for their Private Information. Plaintiff and Class Members provided Defendant with sensitive personal information, including their full names, dates of birth, addresses, Social Security numbers, driver's license numbers, and even private health information.

90.     Defendant's poor data security deprived Plaintiff and Class Members of the benefit of their bargain. When Plan Participants agreed to pay Defendant for its services, whether directly or indirectly through the management of the Plans to protect the interests of the Plan Participants—as Horizon admits is its duty—Plaintiff and other Plan Participants understood and expected that their Private Information would be protected with data security, when in fact Defendant did not provide the expected data security. Accordingly, Plaintiff and Class Members, through Horizon's actuarial services to the Plans, received services that were of a lesser value than what they reasonably expected and their interests were not being protected. As such, Plaintiff and the Class Members suffered pecuniary injury.

91.     Cybercriminals capture Private Information to exploit it; the Class Members are now, and for the rest of their lives will be, at a heightened risk of identity theft. Plaintiff has also incurred (and will continue to incur) damages in the form of, *inter alia*, loss of privacy and costs of engaging adequate credit monitoring and identity theft protection services.

92.     The cybercriminals who obtained the Class Members' Private Information may exploit the information they obtained by selling the data in so-called "dark markets." Having obtained these names, addresses, Social Security numbers, and other Private Information, cybercriminals can pair the data with other available information to commit a broad range of fraud in a Class Member's name, including but not limited to:

- obtaining employment;

- obtaining a loan;

- applying for credit cards or spending money;

- filing false tax returns;

- stealing Social Security and other government benefits; and

- applying for a driver's license, birth certificate, or other public document.

93.     In addition, if a Class Member's Social Security number is used to create false identification for someone who commits a crime, the Class Member may become entangled in the criminal justice system, impairing the person's ability to gain employment or obtain a loan.

94.     As a direct and/or proximate result of Defendant's wrongful actions and/or inaction and the resulting Data Breach, Plaintiff and the other Class Members have been deprived of the value of their Private Information, for which there is a well-established national and international market.

95.     Defendant's wrongful actions and/or inaction and the resulting Data Breach have also placed Plaintiff and the other Class Members at an imminent, immediate, and continuing increased risk of identity theft and identity fraud.

96.     Javelin Strategy & Research, a leading provider of quantitative and qualitative research, notes that "[t]he theft of SSNs places consumers at a substantial risk of fraud."[35] Moreover, there is a high likelihood that significant identity fraud and/or identity theft has not yet been discovered or reported. Even data that have not yet been exploited by cybercriminals bears a high risk that the cybercriminals who now possess Class Members' Private Information will do so

---

[35] *The Consumer Data Insecurity Report: Examining The Data Breach- Identity Fraud Paradigm In Four Major Metropolitan Areas* (June 2014), https://www.it.northwestern.edu/bin/docs/The ConsumerDataInsecurityReport_byNCL.pdf (last accessed Apr. 7, 2022).

at a later date or re-sell it.

97.     As a result of the Data Breach, Plaintiff and Class Members have already suffered damages.

98.     In this case, according to Defendant's notification to the state Attorneys General, cybercriminals had access to Class Members' data from at least November 10, 2021, to November 12, 2021, yet its notice letters to Plan Participants about that Data Breach did not go out until over four months later. This is tantamount to the cybercriminals have a four-month head start on stealing the identities of Plaintiff and Class Members.

99.     Accordingly, that Defendant attempted to pay the cyber criminals to return and not exploit the Private Information is not an assurance that the data were not accessed, acquired, stolen, and sold. Indeed, the likelihood that cybercriminals stole the data covertly is significant, and Horizon's payment to the cybercriminals is unlikely to lessen the risk of its misuse on the Dark Web.

### *Plaintiff Adkinson's Experience*

100.     Mr. John Adkinson, a citizen and resident of Lithia Springs, Georgia, received Notice of Data Breach Letter dated March 23, 2022, which he received on or about March 26, 2022 by U.S. Mail. *See* Exhibit A, attached hereto.

101.     At the time that he received the Notice Letter, he was unaware of why his Personal Identifying Information had been entrusted in Horizon's care. He was unaware that his union benefit plans retained Horizon to manage his and other Class Members' actuarial services for their pension and health and welfare plans.

102.     He reasonably relied on the union and its consultants, like Horizon, to protect the security of his Private Information.

103.    As a result of the Data Breach and the information that he received in the Notice Letter, Mr. Adkinson spends approximately twenty minutes a week dealing with the consequences of the Data Breach (self-monitoring his bank and credit accounts), as well as his time spent verifying the legitimacy of the *Notice of Data Breach*. This time has been lost forever and cannot be recaptured.

104.    Mr. Adkinson is very careful about sharing his own personal identifying information and has never knowingly transmitted unencrypted Private Information over the internet or any other unsecured source.

105.    Mr. Adkinson stores any and all documents containing Private Information in a secure location and destroys any documents he receives in the mail that contain any Private Information or that may contain any information that could otherwise be used to compromise his identity and credit card accounts. Moreover, he diligently chooses unique usernames and passwords for his various online accounts.

106.    Mr. Adkinson suffered actual injury and damages through the actuarial consulting services Horizon provided to his pension and health and welfare Plans due to Horizon's mismanagement of his Private Information before the Data Breach.

107.    Mr. Adkinson suffered actual injury in the form of damages and diminution in the value of his Private Information—a form of intangible property that he entrusted to Horizon for the purpose of providing his union with actuarial services, which was compromised and exfiltrated as a result of the Data Breach.

108.    Mr. Adkinson suffered lost time, annoyance, interference, and inconvenience as a result of the Data Breach due to the theft of his privacy since he received the Notice Letter. He is especially concerned about the theft of his full name paired with his Social Security number.

109.    Mr. Adkinson has suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from his stolen Private Information, especially his Social Security number, being placed in the hands of unauthorized third parties and possibly criminals.

110.    Mr. Adkinson has a continuing interest in ensuring that his Private Information, which, upon information and belief, remains backed up in Horizon's possession, is protected and safeguarded from future breaches.

## V.    CLASS ALLEGATIONS

111.    Plaintiff brings this nationwide class action pursuant to Rule 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure, individually and on behalf of all Members of the following Class:

> The Nationwide Class that Plaintiff seeks to represent is defined as follows:
>
> All persons residing in the United States whose PII and/or PHI was compromised in the data breach discovered by Horizon on or about November 12, 2021 (the "Nationwide Class").
>
> The Georgia Subclass is defined as follows:
>
> All persons residing in Georgia whose PII and/or PHI was compromised in the data breach discovered by Horizon on or about November 12, 2021 (the "Georgia Subclass").

112.    The above Class and Subclass are herein referred to as the "Classes."

113.    Excluded from the Classes are the following individuals and/or entities: Horizon Actuarial Services LLC, and Horizon's owners, subsidiaries, affiliates, officers and directors, and any entity in which Horizon has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; any and all federal, state or local governments, including but not limited to their departments, agencies, divisions,

bureaus, boards, sections, groups, counsels and/or subdivisions; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

114.    Plaintiff reserves the right to modify or amend the definition of the proposed Classes before the Court determines whether certification is appropriate.

115.    **Numerosity**: The Classes are so numerous that joinder of all Members is impracticable. Defendant has identified thousands of customers whose Private Information may have been improperly accessed in the data breach, and the Classes are apparently identifiable within Defendant's records.

116.    **Commonality**: Questions of law and fact common to the Classes exist and predominate over any questions affecting only individual Class Members. These include:

 a.   When Defendant actually learned of the data breach and whether its response was timely and adequate;

 b.   Whether Defendant owed a duty to the Class to exercise due care in collecting, storing, safeguarding and/or obtaining their Private Information;

 c.   Whether Defendant breached that duty;

 d.   Whether Defendant implemented and maintained reasonable security procedures and practices appropriate to the nature of storing Plaintiff's and Class Members' Private Information;

 e.   Whether Defendant acted negligently in connection with the monitoring and/or protection of Plaintiff's and Class Members' Private Information;

 f.   Whether Defendant knew or should have known that they did not employ reasonable measures to keep Plaintiff's and Class Members' Private Information secure and prevent loss or misuse of that Private Information;

g.    Whether Defendant adequately addressed and fixed the vulnerabilities which permitted the data breach to occur;

h.    Whether Defendant caused Plaintiff's and Class Members' damages;

i.    Whether Defendant violated the law by failing to promptly notify Class Members that their Private Information had been compromised; and

j.    Whether Plaintiff and the other Class Members are entitled to long-term credit monitoring and other monetary relief.

117.    **Typicality**: Plaintiff's claims are typical of those of other Class Members because he had his Private Information compromised as a result of the data breach, due to Defendant's misfeasance.

118.    **Adequacy**: Plaintiff will fairly and adequately represent and protect the interests of the Class Members. Plaintiff's Counsel are competent and experienced in litigating privacy-related class actions.

119.    **Superiority and Manageability**: Under Rule 23(b)(3), a class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all the Members of the Class is impracticable. Individual damages for any individual Class Member are likely to be insufficient to justify the cost of individual litigation, so that in the absence of class treatment, Defendant's misconduct would go unpunished. Furthermore, the adjudication of this controversy through a class action will avoid the possibility of inconsistent and potentially conflicting adjudication of the asserted claims. There will be no difficulty in the management of this action as a class action.

120.    Class certification is also appropriate under Fed. R. Civ. P. 23(a) and (b)(2) because Defendant has acted or refused to act on grounds generally applicable to the Class, so that final

injunctive relief or corresponding declaratory relief is appropriate as to the Class as a whole.

121.    Likewise, particular issues under Rule 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include, but are not limited to:

    a.    Whether Defendant owed a legal duty to Plaintiff and Class Members to exercise due care in collecting, storing, using, and safeguarding their Private Information;

    b.    Whether Defendant breached a legal duty to Plaintiff and the Class Members to exercise due care in collecting, storing, using, and safeguarding their Private Information;

    c.    Whether Defendant failed to comply with their own policies and applicable laws, regulations, and industry standards relating to data security;

    d.    Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the data breach;

    e.    Whether Defendant breached express or implied contracts—contracts of which Plaintiff and Class Members were third-party beneficiaries—by failing to safeguard the PII and PHI of Plaintiff and Class Members;

    f.    Whether Class Members are entitled to actual damages, long-term credit monitoring or other injunctive relief, and/or punitive damages as a result of Defendant's wrongful conduct.

g.      Whether Plaintiff and Class Members are entitled to restitution as a result of Horizon's wrongful conduct, and;

h.      Whether Plaintiff and Class Members are entitled to injunctive relief to redress the imminent and currently ongoing harm faced as a result of the Data Breach.

122.    Defendant engaged in a common course of conduct giving rise to the legal rights Plaintiff seeks to enforce, on behalf of himself and the other Members of the Classes, in that all the Plaintiff's and Class Members' data was stored on the same computer systems and unlawfully accessed in the same way. The common issues arising from Defendant's conduct affecting Class Members set out above predominate over any individualized issues. Similar or identical statutory and common law violations, business practices, and injuries are involved. Individual questions, if any, pale in comparison, in both quality and quantity, to the numerous common questions that dominate this action. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

123.    The litigation of the claims brought herein is manageable. Horizon's uniform conduct, the consistent provisions of the relevant laws, and the ascertainable identities of Class Members demonstrates that there would be no significant manageability problems with prosecuting this lawsuit as a class action.

124.    Adequate notice can be given to Class Members directly using information maintained in Horizon's records.

125.    Unless a class wide injunction is issued, Horizon may continue in its failure to properly secure the Private Information of Class Members, Horizon may continue to refuse to provide proper notification to Class Members regarding the Data Breach and the specific Private

Information that was exfiltrated from its network, and Horizon may continue to act unlawfully as set forth in this Complaint.

126.    Further, Horizon has acted or refused to act on grounds generally applicable to the Class and, accordingly, final injunctive or corresponding declaratory relief with regard to the Class Members as a whole is appropriate.

## CAUSES OF ACTION

### COUNT I
**Negligence**
**(On Behalf of Plaintiff and Nationwide Class**
**or alternatively, on behalf of a Georgia Subclass)**

127.    Plaintiff restates and realleges the foregoing paragraphs as if fully set forth herein.

128.    As a condition of any person or entity using the actuarial consulting services of Horizon, Participants are obligated to provide Horizon with certain PII, including but not limited to, their name, date of birth, address, Social Security number, state-issued identification numbers, and medical and/or medical insurance information.

129.    Plaintiff and Class Members entrusted their Private Information to Horizon on the premise and with the understanding that Horizon would safeguard their information, use their Private Information for business purposes only, and/or not disclose their Private Information to unauthorized third parties.

130.    Horizon has full knowledge of the sensitivity of the Private Information and the types of harm that Plaintiff and Class Members could and would suffer if the Private Information were wrongfully disclosed.

131.    Horizon is aware that its role as consultants to Plans is to protect the interests of the Plan Participants, including Plaintiff and Class Members.

132.    Horizon knew or reasonably should have known that the failure to exercise due care

in the collecting, storing, and using of their Plan Participants' Private Information involved an unreasonable risk of harm to Plaintiff and Class Members, even if the harm occurred through the criminal acts of a third party.

133.    Horizon had a duty to exercise reasonable care in safeguarding, securing, and protecting such information from being compromised, lost, stolen, misused, and/or disclosed to unauthorized parties. This duty includes, among other things, designing, maintaining, and testing Horizon's security protocols to ensure that Plaintiff's and Class Members' information in Horizon's possession was adequately secured and protected.

134.    Horizon also had a duty to have procedures in place to detect and prevent the improper access and misuse of Plaintiff's and Class Members' Private Information.

135.    A breach of security, unauthorized access, and resulting injury to Plaintiff and Class Members was reasonably foreseeable, particularly in light of Horizon's business as actuaries and the training and continuing education requirements in this field, for which the diligent protection of Private Information is a continuous forefront issue.

136.    Plaintiff and Class Members were the foreseeable and probable victims of Horizon's inadequate security practices and procedures. Horizon knew of should have known of the inherent risks in collecting and storing the Private Information of Plaintiff and Class, the critical importance of providing adequate security of that Private Information, and the necessity for encrypting Private Information stored on Horizon's systems.

137.    Horizon's own conduct created a foreseeable risk of harm to Plaintiff and Class Members. Horizon's misconduct included, but was not limited to, its failure to take the steps and opportunities to prevent the Data Breach as set forth herein. Horizon's misconduct also included its decisions not to comply with industry standards for the safekeeping of Plaintiff's and Class

Members' Private Information, including basic encryption techniques freely available to Horizon.

138.    Plaintiff and Class Members had no ability to protect their Private Information that was in, and possibly remains in, Horizon's possession.

139.    Horizon was in a position to protect against the harm suffered by Plaintiff and Class Members as a result of the Data Breach.

140.    Horizon had and continues to have a duty to adequately and promptly disclose that the Private Information of Plaintiff and Class Members within Horizon's possession might have been compromised, how it was compromised, and precisely the types of data that were compromised and when. Such notice is necessary to allow Plaintiff and Class Members to take steps to prevent, mitigate, and repair any identity theft and the fraudulent use of their Private Information by third parties.

141.    Horizon had a duty to employ proper procedures to prevent the unauthorized dissemination of the Private Information of Plaintiff and Class Members.

142.    Horizon has admitted that the Private Information of Plaintiff and Class Members was wrongfully lost and disclosed to unauthorized third persons as a result of the Data Breach.

143.    Horizon, through its actions and/or omissions, unlawfully breached its duties to Plaintiff and Class Members by failing to implement industry protocols and exercise reasonable care in protecting and safeguarding the Private Information of Plaintiff and Class Members during the time the Private Information was within Horizon's possession or control.

144.    Defendant failed to meet the minimum standards of any of the following frameworks: the NIST Cybersecurity Framework Version 1.1 (including without limitation PR.AC-1, PR.AC-3, PR.AC-4, PR.AC-5, PR.AC-6, PR.AC-7, PR.AT-1, PR.DS-1, PR.DS-5, PR.PT-1, PR.PT-3, DE.CM-1, DE.CM-4, DE.CM-7, DE.CM-8, and RS.CO-2), and the Center for

Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

145.    These foregoing frameworks are existing and applicable industry standards in the financial services industry, and Defendant failed to comply with these accepted standards thereby opening the door to the cyber incident and causing the Data Breach.

146.    Horizon improperly and inadequately safeguarded the Private Information of Plaintiff and Class Members in deviation of standard industry rules, regulations, and practices at the time of the Data Breach.

147.    Horizon failed to heed industry warnings and alerts to provide adequate safeguards to protect Plan Participants' Private Information in the face of increased risk of theft.

148.    Horizon, through its actions and/or omissions, unlawfully breached its duty to Plaintiff and Class Members by failing to have appropriate procedures in place to detect and prevent dissemination of its Plan Participants' Private Information.

149.    Horizon, through its actions and/or omissions, unlawfully breached its duty to adequately and timely disclose to Plaintiff and Class Members the existence and scope of the Data Breach.

150.    But for Horizon's wrongful and negligent breach of duties owed to Plaintiff and Class Members, the Private Information of Plaintiff and Class Members would not have been compromised.

151.    There is a close causal connection between Horizon's failure to implement security measures to protect the Private Information of Plaintiff and Class Members and the harm suffered or risk of imminent harm suffered by Plaintiff and Class. Plaintiff's and Class Members' Private Information was lost and accessed as the proximate result of Horizon's failure to exercise

reasonable care in safeguarding such Private Information by adopting, implementing, and maintaining appropriate security measures.

152.    Horizon's duty to use reasonable security measures under HIPAA required Horizon to "reasonably protect" confidential data from "any intentional or unintentional use or disclosure" and to "have in place appropriate administrative, technical, and physical safeguards to protect the privacy of protected health information." 45 C.F.R. § 164.530(c)(1).

153.    Some or all of the medical information (PHI) at issue in this case constitutes "protected health information" within the meaning of HIPAA.

154.    Additionally, Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Horizon, of failing to use reasonable measures to protect Private Information. The FTC publications and orders described above also form part of the basis of Horizon's duty in this regard.

155.    Horizon violated Section 5 of the FTC Act by failing to use reasonable measures to protect Private Information and not complying with applicable industry standards, as described in detail herein. Horizon's conduct was particularly unreasonable given the nature and amount of Private Information it obtained and stored and the foreseeable consequences of the immense damages that would result to Plaintiff and Class Members.

156.    Horizon's violation of HIPAA and Section 5 of the FTC Act constitute negligence *per se*.

157.    Plaintiff and Class Members are within the class of persons that the HIPAA and FTC Act were intended to protect.

158.     The harm that occurred as a result of the Data Breach is the type of harm the FTC

Act was intended to guard against. The FTC has pursued enforcement actions against businesses,

which, as a result of their failure to employ reasonable data security measures and avoid unfair and

deceptive practices, caused the same harm as that suffered by Plaintiff and Class.

159.     As a direct and proximate result of Horizon's negligence and negligence *per se*,

Plaintiff and Class Members have suffered and will suffer injury, including but not limited to: (i)

actual identity theft; (ii) the loss of the opportunity of how their Private Information is used; (iii)

the compromise, publication, and/or theft of their Private Information; (iv) out-of-pocket expenses

associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or

unauthorized use of their Private Information; (v) lost opportunity costs associated with effort

expended and the loss of productivity addressing and attempting to mitigate the actual and future

consequences of the Data Breach, including but not limited to efforts spent researching how to

prevent, detect, contest, and recover from tax fraud and identity theft; (vi) costs associated with

placing freezes on credit reports; (vii) the continued risk to their Private Information, which remain

in Horizon's possession and is subject to further unauthorized disclosures so long as Horizon fails

to undertake appropriate and adequate measures to protect the Private Information of consumers

in their continued possession; (viii) future costs in terms of time, effort, and money that will be

expended to prevent, detect, contest, and repair the impact of the Private Information compromised

as a result of the Data Breach for the remainder of the lives of Plaintiff and Class Members; and

(ix) the diminished value of Horizon's goods and services they received.

160.     As a direct and proximate result of Horizon's negligence, Plaintiff and Class

Members have suffered and will continue to suffer other forms of injury and/or harm, including,

but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

161.    Additionally, as a direct and proximate result of Horizon's negligence and negligence *per se*, Plaintiff and Class Members have suffered and will suffer the continued risks of exposure of their Private Information, which remains in Horizon's possession and is subject to further unauthorized disclosures so long as Horizon fails to undertake appropriate and adequate measures to protect the Private Information in its continued possession.

**COUNT II**
**Invasion of Privacy**
**(On Behalf of Plaintiff and the Nationwide Class,**
**or alternatively, on behalf of the Georgia Subclass)**

162.    Plaintiff restates and realleges the foregoing paragraphs as if fully set forth herein.

163.    Plaintiff and Class Members had a reasonable expectation of privacy in the Private Information Defendant mishandled.

164.    By intentionally failing to keep Plaintiff's and Class Members' Private Information safe, and by intentionally misusing and/or disclosing said information to unauthorized parties for unauthorized use, Defendant intentionally invaded Plaintiff's and Class Members' privacy by intrusion.

165.    Defendant knew that an ordinary person in Plaintiff's or a Class Member's position would consider this invasion of privacy and Defendant's intentional actions highly offensive and objectionable.

166.    Defendant invaded Plaintiff's and Class Members' right to privacy and intruded into Plaintiff's and Class Members' private affairs by intentionally misusing and/or disclosing their Private Information without their informed, voluntary, affirmative, and clear consent.

167.    Defendant intentionally concealed from Plaintiff and Class Members an incident

that misused and/or disclosed their Private Information without their informed, voluntary, affirmative, and clear consent.

168.   Through Defendant's delay in notification of Plan Participants, including Plaintiff and Class Members, Defendant acted with intentional malice and oppression and in conscious disregard of Plaintiff's and Class Members' rights to timely notice of the invasion of their privacy.

169.   In failing to protect Plaintiff's and Class Members' Private Information, and in intentionally misusing and/or disclosing their Private Information, Defendant acted with intentional malice and oppression and in conscious disregard of Plaintiff's and Class Members' rights to have such information kept confidential and private.

170.   Plaintiff sustained damages (as outline above) as a direct and proximate consequence of the invasion of his privacy by intrusion, and therefore seeks an award of damages on behalf of himself and the Class.

**COUNT III**
**Unjust Enrichment**
**(On Behalf of Plaintiff and the Classes)**

171.   Plaintiff restates and realleges the foregoing paragraphs as if fully set forth herein.

172.   Plaintiff and Class Members conferred a monetary benefit on Defendant in the form of monetary payments—directly or indirectly—for providing actuarial services for the Plans.

173.   Defendant collected, maintained, and stored the Private Information of Plaintiff and Class Members and, as such, Defendant had knowledge of the monetary benefits conferred by the Plans on behalf of the Plaintiff and Class Members.

174.   The money that Plans paid to Defendant should have been used to pay, at least in part, for the administrative costs and implementation of data security adequate to safeguard and protect the confidentiality of Plaintiff's and Class Members' Private Information. As Defendant

readily acknowledges, its responsibility is to protect the interests of the Plan Participants, not plan managers.

175.    Defendant failed to implement—or adequately implement—those data security practices, procedures, and programs to secure sensitive Private Information, as evidenced by the Data Breach.

176.    As a result of Defendant's failure to implement data security practices, procedures, and programs to secure sensitive Private Information, Plaintiff and Class Members suffered actual damages in an amount of the savings and costs Defendant reasonably and contractually should have expended on data security measures to secure Plaintiff's Private Information.

177.    Under principles of equity and good conscience, Defendant should not be permitted to retain the money belonging to Plaintiff and Class Members because Defendant failed to implement the data security measures adequate to safeguard and protect the confidentiality of Plaintiff's and Class Members' Private Information and paid for by the Plans on behalf of the Plan Participants.

178.    As a direct and proximate result of Defendant's decision to profit rather than provide adequate security, and Defendant's resultant disclosures of Plaintiff and Class Members' Private Information, Plaintiff and Class Members suffered and continue to suffer considerable injuries in the forms of time and expenses mitigating harms, diminished value of Private Information, loss of privacy, and a present increased risk of harm.

**COUNT IV**
**Breach of Implied Contract**
**(On Behalf of Plaintiff and the Classes)**

179.    Plaintiff restates and realleges the foregoing paragraphs as if fully set forth herein.

180.    This count is plead in the alternative to Count III (Unjust Enrichment).

181.    Upon information and belief, Plaintiff's and Class Members' Private Information was provided to Defendant as part of the actuarial services that Defendant provided to its Plans, with the acknowledgment that Defendant's duty was to protect the interests of Plan Participants.

182.    In exchange, the Plans (including those in which Plaintiff and Class Members are Participants) agreed to pay Defendant money for actuarial services for the benefit of and to protect the interests of Plan Participants.

183.    Plaintiff and Class Members are the intended third-party beneficiaries to the contracts entered into between their Plans (or other business entities) and Defendant.

184.    By providing actuarial services for the Plans (including those in which Plaintiff and Class Members are Participants), Defendant and the Plans entered into implied contracts for the provision of adequate data security, separate and apart from any express contracts concerning the security of Plaintiff's and Class Members' Private Information, whereby, Defendant was obligated to take reasonable steps to secure and safeguard Plaintiff's and Class Members' Private Information.

185.    In entering into such implied contracts, Plaintiff and Class Members reasonably believed and expected that Defendant's data security practices complied with relevant laws and regulations, including HIPAA, and were consistent with industry standards.

186.    Both the provision of actuarial services and the protection of Plaintiff's and Class Members' Private Information were material aspects of these implied contracts.

187.    Defendant had an implied duty of good faith to ensure that the Private Information of Plaintiff and Class Members in its possession was only used in accordance with its contractual obligations.

188. Defendant was therefore required to act fairly, reasonably, and in good faith in carrying out its contractual obligations to protect the confidentiality of Plaintiff's and Class Members' Private Information and to comply with industry standards and applicable laws and regulations for the security of this information.

189. Under these implied contracts for data security, Defendant was further obligated to provide Plaintiff and all Class Members, with prompt and sufficient notice of any and all unauthorized access and/or theft of their Private Information.

190. Defendant breached the implied contracts by failing to take adequate measures to protect the confidentiality of Plaintiff's and Class Members' Private Information, resulting in the Data Breach.

191. Defendant further breached the implied contract by providing untimely notification to Plaintiff and Class Members who may already be victims of identity fraud or theft or are at present risk of becoming victims of identity theft or fraud.

192. The Data Breach was a reasonably foreseeable consequence of Defendant's actions in breach of these contracts.

193. As a result of Defendant's conduct, Plaintiff, Class Members, and the Plans did not receive the full benefit of their bargain.

194. Had Defendant disclosed that its data security was inadequate, neither the Plans, Plaintiff, Class Members, nor any reasonable person or business entity like the Plans would have entered into such contracts with Defendant.

195. As a result of Data Breach, Plaintiff and Class Members suffered actual damages resulting from the theft of their Private Information, as well as the loss of control of their Private Information, and remain at present risk of suffering additional damages.

196.    Plaintiff and Class Members are entitled to compensatory, consequential, and nominal damages suffered as a result of the Data Breach, including the loss of the benefit of the bargain.

197.    Plaintiff and Class Members are also entitled to injunctive relief requiring Defendant to, *e.g.*, (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) immediately provide adequate long-term credit monitoring to all Class Members.

### COUNT V
### Breach of Fiduciary Duty
### (On Behalf of Plaintiff and the Classes)

198.    Plaintiff re-alleges and incorporates by reference the paragraphs above as if fully set forth herein.

199.    In providing their Private Information to Defendant through the Plans, Plaintiff and Class Members justifiably placed special confidence in Defendant to act in good faith and with due regard to interests of Plaintiff and Class Members to safeguard and keep confidential that Private Information.

200.    There was an understanding between the parties that Defendant would act for the benefit of Plan Participants—*i.e.*, Plaintiff and Class Members—in preserving the confidentiality of the Private Information.

201.    Defendant acknowledges that its responsibility is to protect the financial interests and welfare of the Plan Participants.

202.    In light of the special relationship between Defendant and Plaintiff and Class Members, whereby Defendant became guardian of Plaintiff's and Class Members' Private Information, Defendant became a fiduciary by its undertaking and guardianship of the Plan

Participants' Private Information, to act primarily for the benefit of the Participants, including Plaintiff and Class Members, for the safeguarding of Plaintiff's and Class Members' Private Information.

203.    Defendant has a fiduciary duty to act for the benefit of Plaintiff and Class Members upon matters within the scope of its actuarial duties, in particular, to keep secure the Private Information of Plan Participants.

204.    Defendant breached its fiduciary duties to Plaintiff and Class Members by failing to diligently discovery, investigate, and give Participants notice of the Data Breach in a reasonable and practicable period of time.

205.    Defendant breached its fiduciary duties to Plaintiff and Class Members by failing to encrypt and otherwise protect the integrity of the systems containing Plaintiff's and Class Members' Private Information.

206.    Defendant breached its fiduciary duties owed to Plaintiff and Class Members by failing to timely notify and/or warn Plaintiff and Class Members of the Data Breach.

207.    Defendant breached its fiduciary duties owed to Plaintiff and Class Members by failing to ensure the confidentiality and integrity of electronic PHI Defendant created, received, maintained, and transmitted, in violation of 45 C.F.R. § 164.306(a)(1).

208.    Defendant breached its fiduciary duties owed to Plaintiff and Class Members by failing to implement technical policies and procedures for electronic information systems that maintain electronic PHI to allow access only to those persons or software programs that have been granted access rights in violation of 45 C.F.R. § 164.312(a)(1).

209.    Defendant breached its fiduciary duties owed to Plaintiff and Class Members by failing to implement policies and procedures to prevent, detect, contain, and correct security violations, in violation of 45 C.F.R. § 164.308(a)(1).

210.    Defendant breached its fiduciary duties owed to Plaintiff and Class Members by failing to identify and respond to suspected or known security incidents and to mitigate, to the extent practicable, harmful effects of security incidents that are known to the covered entity in violation of 45 C.F.R. § 164.308(a)(6)(ii).

211.    Defendant breached its fiduciary duties owed to Plaintiff and Class Members by failing to protect against any reasonably-anticipated threats or hazards to the security or integrity of electronic PHI in violation of 45 C.F.R. § 164.306(a)(2).

212.    Defendant breached its fiduciary duties owed to Plaintiff and Class Members by failing to protect against any reasonably anticipated uses or disclosures of electronic PHI that are not permitted under the privacy rules regarding individually identifiable health information in violation of 45 C.F.R. § 164.306(a)(3).

213.    Defendant breached its fiduciary duties owed to Plaintiff and Class Members by failing to ensure compliance with the HIPAA security standard rules by its workforce in violation of 45 C.F.R. § 164.306(a)(94).

214.    Defendant breached its fiduciary duties owed to Plaintiff and Class Members by impermissibly and improperly using and disclosing PHI that is and remains accessible to unauthorized persons in violation of 45 C.F.R. §§ 164.502, *et seq.*

215.    Defendant breached its fiduciary duties owed to Plaintiff and Class Members by failing to effectively train all members of its workforce (including independent contractors) on the policies and procedures with respect to PHI as necessary and appropriate for the members of its

workforce to carry out their functions and to maintain security of PHI in violation of 45 C.F.R. § 164.530(b) and 45 C.F.R. § 164.308(a)(5).

216.    Defendant breached its fiduciary duties owed to Plaintiff and Class Members by failing to design, implement, and enforce policies and procedures establishing physical and administrative safeguards to reasonably safeguard PHI, in compliance with 45 C.F.R. § 164.530(c).

217.    Defendant breached its fiduciary duties to Plaintiff and Class Members by otherwise failing to safeguard Plaintiff's and Class Members' Private Information.

218.    As a direct and proximate result of Defendant's breaches of its fiduciary duties, Plaintiff and Class Members have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the compromise, publication, and/or theft of their Private Information; (iii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft and/or unauthorized use of their Private Information; (iv) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach and data breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft; (v) the continued risk to their Private Information, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information in its continued possession; (vi) future costs in terms of time, effort, and money that will be expended as result of the Data Breach and data breach for the remainder of the lives of Plaintiff and Class Members; and (vii) the diminished value of Defendant's services they received.

219.    As a direct and proximate result of Defendant's breaches of its fiduciary duties, Plaintiff and Class Members have suffered and will continue to suffer other forms of injury and/or harm, and other economic and non-economic losses.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of himself and all Class Members, requests judgment against Horizon Actuarial Services LLC and its owners, and prays  that the Court grant the following:

A.    For an Order certifying the Nationwide Classes or, in the alternative, the Subclass as defined herein, and appointing Plaintiff and his Counsel to represent the certified Nationwide Class and Subclass;

B.    For equitable relief enjoining Horizon from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Plaintiff's and the Class Members' Private Information, and from refusing to issue prompt, complete, any accurate disclosures to the Plaintiff and Class;

C.    For injunctive relief requested by Plaintiff, including but not limited to, injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and Class, including but not limited to an Order:

   i.    prohibiting Horizon from engaging in the wrongful and unlawful acts described herein;

   ii.    requiring Horizon to protect, including through encryption, all data collected through the course of its business in accordance with all applicable regulations, industry standards, and federal, state or local laws;

   iii.    requiring Horizon to delete, destroy, and purge the personal identifying

information of Plaintiff and Class unless Horizon can provide to the Court reasonable justification for the retention and use of such information when weighed against the privacy interests of Plaintiff and Class;

iv.     requiring Horizon to implement and maintain a comprehensive Information Security Program designed to protect the confidentiality and integrity of Plaintiff's and Class Members' personal identifying information;

v.      prohibiting Horizon from maintaining Plaintiff's and Class Members' personal identifying information on a cloud-based database;

vi.     requiring Horizon to engage independent third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Horizon's systems on a periodic basis, and ordering Horizon to promptly correct any problems or issues detected by such third-party security auditors;

vii.    requiring Horizon to engage independent third-party security auditors and internal personnel to run automated security monitoring;

viii.   requiring Horizon to audit, test, and train its security personnel regarding any new or modified procedures;

ix.     requiring Horizon to segment data by, among other things, creating firewalls and access controls so that if one area of Horizon's network is compromised, hackers cannot gain access to other portions of Horizon's systems;

x.      requiring Horizon to conduct regular database scanning and securing checks;

xi.     requiring Horizon to establish an information security training program that includes at least annual information security training for all employees, with

additional training to be provided as appropriate based upon the employees' respective responsibilities with handling personal identifying information, as well as protecting the personal identifying information of Plaintiff and Class Members;

    xii.    requiring Horizon to conduct internal training and education routinely and continually, and on an annual basis to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach;

    xiii.    requiring Horizon to implement, maintain, regularly review, and revise as necessary a threat management program designed to appropriately monitor Horizon's information networks for threats, both internal and external, and assess whether monitoring tools are appropriately configured, tested, and updated;

    xiv.    requiring Horizon to meaningfully educate all Class Members about the threats that they face as a result of the loss of their confidential personal identifying information to third parties, as well as the steps affected individuals must take to protect themselves; and

    xv.    requiring Horizon to implement logging and monitoring programs sufficient to track traffic to and from Horizon's servers;

D.    For an award of damages, including actual, nominal, and consequential damages, as allowed by law in an amount to be determined;

E.    For an award of punitive damages;

F.    For an award of attorneys' fees, costs, and litigation expenses, as allowed by law;

G.      For prejudgment interest on all amounts awarded; and

H.      Such other and further relief as this Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands that this matter be tried before a jury.


Date: April 11, 2022                              Respectfully Submitted,


                                                  */s/ Gary E. Mason*
                                                  Gary E. Mason (MD Bar No. 15033)
                                                  Danielle L. Perry*
                                                  Lisa A. White*
                                                  **MASON LLP**
                                                  5101 Wisconsin Avenue NW, Suite 305
                                                  Washington, DC 20016
                                                  Phone: (202) 429-2290
                                                  Fax: (202) 429-2294
                                                  gmason@masonllp.com
                                                  dperry@masonllp.com
                                                  lwhite@masonllp.com

                                                  *Attorneys for Plaintiff and the Proposed Classes*

                                                  *application for *pro hac vice* forthcoming